PUBLIC UTILITIES: ELECTRICITY – LIGHT & POWER: DELINQUENT BILLS: Municipal utilities must use reasonable methods to compel payment for services and utility service may not be disconnected other than for good cause. Op. Atty. Gen. 624c-4 (Nov. 2, 1938) superseded.



**STATE OF MINNESOTA**

OFFICE OF THE ATTORNEY GENERAL

624c-4
(cr.ref. 624d-5)

KEITH ELLISON
ATTORNEY GENERAL

May 16, 2019

SUITE 1800
445 MINNESOTA STREET
ST. PAUL, MN 55101-2134
TELEPHONE: (651) 297-2040

John T. Shockley
Ohnstad Twichell, P.C.
444 Sheyenne St., Ste. 102
West Fargo, North Dakota 58078-0458

Re:  **Request for Opinion Concerning Disconnection of Municipal Utility Services**

Dear Mr. Shockley,

I thank you for your April 12, 2019 letter requesting an opinion regarding the ability of municipal utilities to disconnect a utility service for nonpayment of another municipal service.

## FACTS

You state that the Moorhead Public Service Commission currently provides water and electric service to residents, while the city provides and charges for garbage, solid waste, pest and forestry, recycling, stormwater, streetlight utility, and wastewater.

## QUESTION

You ask whether the municipality may shut off utility service, water or electricity, for failure to pay charges for another utility service or any municipal service listed above.

## ANALYSIS

We answer your question in the negative. In Minnesota, customers of municipal utilities have a legitimate entitlement to continued utility service, and utility service may not be disconnected without good cause. *See Smith v. City of Owatonna*, 450 N.W. 2d 309, 311, 313 (Minn. 1990). Municipal utilities, however, may enforce collection of charges by reasonable regulations, subject to statutory prohibitions on disconnection and provided that the customer receives proper notice and has an opportunity to be heard. *See, e.g., id.* at 313; *City of East Grand Forks v. Luck*, 107 N.W. 393, 394 (Minn. 1938); Minn. Stat. §§ 216B.097, 216B.0975 (2018). Certain methods to compel payment of utility services and fees, however, have been found unreasonable. *See Cascade Motor Hotel, Inc. v. City of Duluth*, 348 N.W.2d 84, 85-86 (Minn. 1984) (finding a city's refusal to deliver utility service to a customer unless the customer paid the overdue account of a previous occupant to be arbitrary and unreasonable).



Courts in other states have discussed the methods municipal utilities may or may not use to enforce the collection of fees or utility charges. As you noted in your letter, the South Dakota Supreme Court held that a city wrongfully disconnected electrical and telephone service for nonpayment of garbage collection fees because garbage collection was a collateral matter. *See Owens v. City of Beresford*, 201 N.W.2d 890, 893 (S.D. 1972). Similarly, the Nebraska Supreme Court held that a city could not attempt to force collection of garbage fees by disconnecting water service. *See Garner v. City of Aurora*, 30 N.W.2d 917, 921 (Neb. 1948). On the other hand, the California Supreme Court held that, where a city used a single bill for municipal services (water, sewer, and garbage collection), the city did not violate due process by terminating all municipal services for failure to pay the garbage collection portion of the joint bill. *See Perez v. City of San Bruno*, 616 P.2d 1287, 1296-97 (Cal. 1980). The court cautioned, however, that "when a statutory or legislative scheme utilizes a means to reach its end and which is unduly harsh or exacts a penalty which may be deemed oppressive in light of the legitimate objections sought to be achieved, it may be held to be violative of constitutional due process guarantees." *Id.* at 1297.

A Minnesota Attorney General opinion from 1938 opined that a village providing water, heat, and electricity, all billed on one statement, may adopt a regulation allowing for discontinuance of any and all services for delinquency of one service. Op. Atty. Gen. 624c-4 (Nov. 2, 1938). While Attorney General opinions are given careful consideration, they are not binding. *Village of Blaine v. Indep. Sch. Dist. No. 12, Anoka Cty.*, 138 N.W.2d 32, 39 (Minn. 1965). Given the substantial development of the law since 1938, regarding consumer protection, entitlements to provision of gas, electric, and water service, and the reasonableness of terminating services for nonpayment, this Office is not confident that the 1938 opinion remains an accurate legal analysis and expressly overrules it.

Ultimately, whether enforcement of a city ordinance that allows for disconnection of a utility service based upon nonpayment of another service is unreasonable turns on specific questions of fact and the construction of any local ordinance or resolution implementing the enforcement method. The Attorney General does not render opinions that require making such factual determinations or construing the meaning of terms in local ordinances or resolutions. *See* Op. Atty. Gen. 629a (May 9, 1975). You did not supply a specific ordinance, rule, or regulation

implementing the enforcement method you discussed in your request. Given the breadth of the municipal services established in your inquiry, however, we do not believe that the law allows a municipality to disconnect utility service for nonpayment of the varied and unrelated municipal services stated in your letter.

Sincerely,

KEITH ELLISON
Attorney General

KATHERINE HINDERLIE
Assistant Attorney General

(651) 757-1468 (Voice)
(651) 297-1235 (Fax)

Enclosure:     Op. Atty. Gen. 629a (May 9, 1975)
                    Op. Atty. Gen. 624c-4 (Nov. 2, 1938)

#4479693-v1

## Opinions of the Attorney General
### Hon. WARREN SPANNAUS

**ATTORNEY GENERAL: OPINIONS OF:** Proper subjects for opinions of Attorney General discussed.

| | |
|---|---|
| Thomas M. Sweeney, Esq. | May 9, 1975 |
| Blaine City Attorney | 629-a |
| 2200 American National Bank Building | (Cr. Ref. 13) |
| St. Paul, Minnesota 55101 | |

In your letter to Attorney General Warren Spannaus, you state substantially the following

#### FACTS

At the general election in November 1974 a proposal to amend the city charter of Blaine was submitted to the city's voters and was approved. The amendment provides for the division of the city into three election districts and for the election of two council members from each district. It also provides that the population of each district shall not be more than 5 percent over or under the average population per district, which is calculated by dividing the total city population by three. The amendment also states that if there is a population difference from district to district of more than 5 percent of the average population, the charter commission must submit a redistricting proposal to the city council.

The Blaine Charter Commission in its preparation and drafting of this amendment intended that the difference in population between election districts would not be more than 5 percent over or under the average population for a district. Therefore, the maximum allowable difference in population between election districts could be as great as 10 percent of the average population.

You then ask substantially the following

#### QUESTION

Does the Blaine City Charter, as amended, permit a maximum population difference between election districts of 10 percent of the average population per district?

#### OPINION

The answer to this question depends entirely upon a construction of the Blaine City Charter. No question is presented concerning the authority to adopt this provision or involving the application or interpretation of state statutory provisions. Moreover, it does not appear that the provision is commonly found in municipal charters so as to be of significance to home rule charter cities generally. See Minn. Stat. § 8.07 (1974), providing for the issuance of opinions on questions of "public importance."*

---

\* Minn. Stat. § 8.07 (1974) lists those officials to whom opinions may be issued. That section provides as follows:

The attorney general on application shall give his opinion, in writing, to county, city, town attorneys, or the attorneys for the board of a school district or unorganized territory on questions of public importance; and on application of the commissioner of education he shall give his opinion, in writing, upon any question arising under the laws relating to public schools. On all school matters such opinion shall be decisive until the question involved be decided otherwise by a court of competent jurisdiction.

See also Minn. Stat. §§ 8.05 (regarding opinions to the leg-

| IN THIS ISSUE | | |
|---|---|---|
| **Subject** | **Op. No.** | **Dated** |
| ATTORNEY GENERAL: Opinions Of. | | |
| | 629-a | 5/9/75 |
| COUNTY: Pollution Control: Solid Waste. | | |
| | 125a-68 | 5/21/75 |

In construing a charter provision, the rules of statutory construction are generally applicable. See 2 McQuillin, Municipal Corporations § 9.22 (3rd ed. 1966). The declared object of statutory construction is to ascertain and effectuate the intention of the legislature. Minn. Stat. § 645.16 (1974). When the words of a statute are not explicit, the legislature's intent may be ascertained by considering, among other things, the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied, and the object to be attained. **Id.**

Thus, an interpretation of a charter provision such as that referred to in the facts would require an examination of a number of factors, many of which are of a peculiarly local nature. Local officials rather than state officials are thus in the most advantageous position to recognize and evaluate the factors which have to be considered in construing such a provision. For these reasons, the city attorney is the appropriate official to analyze questions of the type presented and provide his or her opinion to the municipal council or other municipal agency. The same is true with respect to questions concerning the meaning of other local legal provisions such as ordinances and resolutions. Similar considerations dictate that provisions of federal law generally be construed by the appropriate federal authority.

For purposes of summarizing the rules discussed in this and prior opinions, we note that rulings of the Attorney General do not ordinarily undertake to:

(1) Determine the constitutionality of state statutes since this office may deem it appropriate to intervene and defend challenges to the constitutionality of statutes. See Minn. Stat. § 555.11 (1974); Minn. R. Civ. App. P. 144; Minn. Dist Ct. (Civ.) R 24.04; Op. Atty. Gen. 733G, July 23, 1945.

(2) Make factual determinations since this office is not equipped to investigate and evaluate questions of fact. See, e.g., Ops. Atty. Gen. 63a-11, May 10, 1955 and 121a-6, April 12, 1948.

(3) Interpret the meaning of terms in contracts and other agreements since the terms are generally adopted for the purpose of preserving the intent of the parties and construing their meaning often involves factual determinations as to such intent. See. Op. Atty. Gen. 629-a, July 25, 1973.

(4) Decide questions which are likely to arise in litigation which is underway or is imminent, since our opinions are advisory and we must defer to the judiciary in

---

islature and legislative committees and commissions and to state officials and agencies) and 270.09 (regarding opinions to the Commissioner of Revenue).

**MINNESOTA LEGAL REGISTER**

Published monthly and containing all Opinions
of the Minnesota Attorney General

**Published by The Progress-Register**

200 Upper Midwest Bldg., Minneapolis, Mn. 55401
Sold only in combination with The Progress-
Register (weekly) at $15.00 per year in Min-
nesota. Out-of-state $16.00 per year. Payable
in advance. Binder and Index service included.

Second-class postage paid at Minneapolis, Mn.

such cases. See Ops. Atty. Gen. 519M, Oct. 18, 1956, and 196n, March 30, 1951.

(5) Decide hypothetical or moot questions. See Op. Atty. Gen. 519M, May 8, 1951.

(6) Make a general review of a local ordinance, regulation, resolution or contract to determine the validity thereof or to ascertain possible legal problems, since the task of making such a review is, of course, the responsibility of local officials. See Op. Atty. Gen. 477b-14, Oct. 9, 1973.

(7) Construe provisions of federal law. See textual discussion supra.

(8) Construe the meaning of terms in city charters and local ordinances and resolutions. See textual discussion supra.

We trust that the foregoing general statement on the nature of opinions will prove to be informative and of guidance to those requesting opinions.

WARREN SPANNAUS, Attorney General
Thomas G. Mattson, Assist. Atty. Gen.

November 2, 1938

Mr. Nahman Schochet
Village Attorney
Coleraine, Minnesota

Dear Sir:

This will acknowledge receipt of your letter to
Attorney General William S. Ervin wherein you state and
inquire:

> "Situation:  The village water, light, etc.
> commission sells the three following services:
> (1) water, (2) heat, and (3) electricity.  The
> three items are billed on one statement, although
> itemized separately.  Consumer, in our case,
> pays up his water and electricity in full, leav-
> ing the heat charges unpaid.  Can the commis-
> sion discontinue either of the other services
> (water or electricity) upon adoption of such a
> ruling as long as the heat is not paid?"

In the case of City of East Grand Forks v. Luck, 97
Minn. 373, our Supreme Court held that a municipality may
adopt reasonable rules and regulations to enforce payment
of charges for such services rendered to consumers by the
municipality.  As pointed out in that case, and also in
the case of Powell v. City of Duluth, 91 Minn. 53, the
obligation on the part of the consumer to receive and pay
for such services rests upon contract and if the method of
enforcement of payment for the same adopted by the munici-
pality is reasonable and not prohibitory the consumer sub-
jects himself to the rules and regulations of the municipality
pertaining to such method of payment.

Mr. Nahman Schochet -- 2

Under the rule laid down by our Supreme Court in
the above referred to cases, we are of the opinion that
said water and light commission may adopt a regulation
providing that whenever any of the charges for services
furnished by the water and light department of the village
become delinquent any or all of such services may be dis-
continued until the consumer pays such delinquent bills.

You also inquire:

"Would it make any difference if, when less
than the total due on the commission's
statement is paid, if the receipt were marked
'payment on account' instead of 'payment in
full for water and electricity to_____'?"

If the commission adopts a regulation providing that
when the charges for any of the services furnished to a con-
sumer by the water and light department become delinquent all
of such services may be discontinued until the charges therefor
are paid, we believe that the commission's right to dis-
continue such services to delinquent consumers would not be
affected by the commission's acceptance of a part of the
amount due from the consumer.

Yours very truly

WILLIAM S. ERVIN
Attorney General

By

DWIGHT M. JOHNSON
Special Assistant Attorney General

DMJ/EMG